This case aptly illustrates the distinction the Supreme Court drew in Gonzales v. Thaler between truly jurisdictional questions, which may never be waived, and mandatory but non-jurisdictional matters, which are subject to the usual rules of the adversary process, requiring timely and effective action. Let's assume for the moment that, not to interrupt your flow, but let's assume for the moment that we agree with you that 2254 D is not jurisdictional. The language is still mandatory, and as the State has argued, citing, I guess, Gardner v. Goletka, three other circuits, the 10th, 2nd, and 6th, have said that a party can't waive the standard of review and that we have to apply it. Is this what you're seeking, the rule you're seeking from us? Would that create a circuit split? I don't believe it would, Your Honor, for two reasons. And this is demonstrated before – I have two levels of response. My first level would – on the general point, those circuit decisions do all precede Gonzales v. Thaler. But Gonzales v. Thaler is looking at the jurisdiction. Yes. So we have authority to hear the case. Let's assume for present purposes that we have jurisdiction. What we're talking about is the mandatory language of 2254 D. And those cases say the failure of the State in three cases, in two of the cases, or the petitioner in one of the cases, doesn't waive the standard of review. We're still bound to apply it. I think those situations are readily distinguishable because the cases such as Eve and Gardner all involved the much more fundamental question of whether the court was going to apply 2254 D review at all. And here, this court did apply 2254 D review. There's no question about that. Like most issues in contemporary habeas jurisprudence. But we didn't really apply it, right? Because what 2254 D review – one review requires is that we compare the State court decision to the Supreme Court law precedent at the time of the decision, as the court has now clarified in green. And so we, in fact, didn't apply that standard because we were looking at a decision that was decided after the State court decision had issued. Your Honor, I think there is a huge difference between the basic question, does D1 apply at all, and subsidiary questions such as the timing question in this case and various questions that arrive in almost every Federal habeas case as to how. And so the question is, what was the clearly established law at the time? And we, applying one way of looking at that, came to a conclusion. But there could be a myriad of other issues about what's the clearly established law at the time. There certainly could. There could be an issue. Is a particular portion of an opinion a holding or dictum? So what if the party, what if the petitioner had said the State court was wrong because Ninth Circuit precedent says this is unconstitutional? And the State says, no, the Ninth Circuit precedent is distinguishable. So would you then say, well, they've waived the application of Supreme Court precedent, and you court should just apply Ninth Circuit precedent? Isn't that the force of your argument? Fortunately, I don't think this involves that situation, but let me give you three examples. Well, is that similar? Suppose there was a Supreme Court precedent that everybody was ignoring, and the State, in Judge Akuta's hypothetical, in response to us and say, well, it doesn't matter what the Ninth Circuit precedent is because there's a certain Supreme Court precedent that had never been mentioned anyplace. And we don't come up with it ourselves because we're not geniuses. We don't always do everything right. Can they come back later and say, oh, wait a minute, you forgot about the Supreme Court precedent, which they never had mentioned and which we never had mentioned and nobody had ever mentioned? I think it's contrary. As with any other precedent affecting the merits, it is contrary to elementary principles of appellate review. But that wasn't what happened here, right? I mean, the State court said Seabird is not applicable. They said that throughout. They even have language saying it's not clearly established Supreme Court law. So there's no question that Judge Berzon's hypothetical applies here, does it? The State court didn't say that Seabird's not applicable. You mean the State's brief, Your Honor, or the — The State's brief, right. The State's brief — The State said Seabird's not applicable. That's the position they've taken throughout. The State alleged an argument which the panel unanimously rejected. It argued that the issue was non-exhaustive. It — Well, it may have had — the argument may have been legally erroneous, though they do have elsewhere in their brief the statement that Seabird was not clearly established Supreme Court precedent. So it wasn't that they ignored that issue entirely. But even so, I mean, in the Ninth Circuit and under LeBron, the Supreme Court case, we make a distinction between the claim and specific legal arguments supporting the claim, don't we? Your Honor, the sequence was that in the State's brief, it specifically, as to the 2254 D1 standard, adopted the time of finality test. During our first oral argument two years ago, Your Honor raised this question to the State's counsel. And the State's counsel said, we haven't made that argument — They said they didn't waive it. I mean, I went back and looked at those — the oral argument transcript as well, and they said, no, we don't waive it. So they never waived that argument. But — but in my — but during — as that recording reflects, they also said, we haven't argued that. In fact, we have assumed the opposite. Or as quoted in — as quoted in footnote seven of the panel's original opinion. And then — so there was obviously the first opportunity would have been the brief. The second opportunity would have been when Your Honor raised it during the February 2010 oral argument. And then there was seven months in between that oral argument and this oral argument. And that would have been plenty of time if — Did you argue? Did the appellant argue that they had waived it? I don't remember seeing any argument of waiver until after the opinion was issued. I argued that the — as the State conceded that — Why would you argue a waiver when — to an argument that they weren't making? Exactly, Your Honor. The argument — I argued time of finality. State agreed. Once — It turned out everyone was wrong, right? That at the time — So now it's been argued of what the time of finality is. I don't think there's any dispute about it. So now we've had arguments on both sides. The Supreme Court has told us that it's the State court opinion at the time that the — it's the Supreme Court opinion at the time the State court decides. So we know that. And there's no further dispute on either side, I take it. The Supreme Court has also, however — I'd say both the Supreme Court and this court have demonstrated that this type of argument is waivable. The Supreme Court first did so in the very case that it teed up this issue, Smith v. Fisac. Oh, but in that case they denied, really. Oh, well, Your Honor — But if the verdict was v. Tompkins, they were very clear that the court has to determine whether AEDPA is applicable in order to grant relief. It doesn't have to if it's going to deny relief. So Fisac and Immersion are simply clarified by Bergwis, and they're not on point. However, Your Honor, if this particular timing question was akin to a jurisdictional question, the court would not have had the luxury of skipping over that question — Well, it could be that it's a one-way ratchet. I mean, exhaustion's a one-way ratchet. But more fundamentally, more recently in James, in this Court, and Wood in the Supreme Court, the need for — I mean, essentially the question is, is this some special rule, even though it's a discrete subrule, that just doesn't follow the usual procedure so that even though the district court — the district court, for example, was presented with an exhaustion argument. He said, I'm not going to decide the exhaustion argument. I'm going to go to the merits. If he'd been presented with this argument, he, you know, may or may not have done that, but so we waste one level of time. Then we come to us and we ask the same question. They say, no, no, we're not arguing that. So we go and we decide what we decide. And all of a sudden, the petition for rehearing, they come back and they say, we've never briefed — nobody's ever briefed this, and now we should brief it. That's not the way the litigation ordinarily proceeds. And the question is, don't the most recent cases kind of come back to those basic precepts in the habeas context rather than saying we're in a different world? They certainly do, Your Honor. Both James v. Ryan and also, interestingly, one of the Supreme Court cases cited in the State's brief. So James didn't — Noles v. Merzance. James didn't waive 2254-D review. It said that the State had waived an argument that the PCR court had decided an issue on the merits, a different issue, right? Oh, I disagree, Your Honor. So the State — so the question was whether the State PCR court had decided an issue on procedural grounds or on the merits. And the panel held one. They found that it hadn't decided it on the merits. And they also found that the State court, by failing to raise that issue, had waived it. But they didn't say they had waived 2254-D. But, in fact, they did, Your Honor. That was the result, but that wasn't what they had waived. Here, there isn't that subsidiary issue. It says 2254-D and the effect of that language. But, Your Honor, I would say this, that James involved a more fundamental question. Turning on that characterization of, was it a State denial of merits or procedural, was whether or not 2254-D applied. Well, that was the result. But that was just a question of whether the State PCR court had decided on the merits and the panel facts that it had not. Now, it would have been a different case if it was clear that the State court had denied it on the merits. I think maybe the panel would have reached a different result. That would have been very hard to say, yes, they decided on the merits, but we're going to ignore that. And they didn't do that. But the determination of whether the State court decision is an adjudication on the merits is as much a part of 2254-D review as is the clearly established question. And this Court adhered to the elementary rule of appellate procedure that issues can't be raised for the first time on rehearing. Well, that's a credential rule, right? That's not a jurisdictional question. Because we frequently do address issues. We've got all sorts of exceptions for it's a legal issue or the other side is in prejudice because they had the opportunity to brief it. So we frequently will reach those issues. Especially in a case where we have supplemental briefing, we'll reach them. I think, Your Honor, the lesson that emerges out of both of this term's decisions in Gonzales v. Thaler and Wood v. Milliard is that appellate courts should adhere to those traditional rules because there are grave consequences for judicial economy if they don't. But in Wood. At least in APS cases in which there are very stringent rules that reply to petitioner and there at least ought to be a two-way street. That is definitely so because much of the story of the last two decades of habeas jurisprudence has been holding litigants to the consequences of their strategies, their decisions, their acts and omissions throughout the process. But in Wood, didn't the Supreme Court make a distinction between an intentional forfeiture or intentional waiver and just they didn't raise it? I mean, in that case, they said, we're going to make a distinction here because the State intentionally directed the Court away from the statute of limitations issue. So here, the State didn't do that. They raised, they said, we're not waiving this issue. So there was no waiver. But the State, when asked, when invited by the Court to make the argument. Did they say in Wood, we're not waiving it, but we're not raising it or something weird like that? Yes. It's very similar. In Wood, the State said something to the effect of we're aware of this issue. We're not challenging it. But we've decided not to challenge it. And you should assume that the statute of limitations has not run. And the Court said when you do that consciously and intentionally, then we'll say that you can't. You can't. You've intentionally waived it. And in doing so. I don't see that here. Are we getting away from the remand and the reason we hear this in light of Green? Your Honor. The state of the law at the time of the California Court of Appeals decision was apparently ELSTAT. And under ELSTAT, the confession was voluntary. Now, if the law changed, it changed after the Court of Appeals ruled apparently based on ELSTAT. Is the law different now under Missouri? Your Honor, I believe that before reaching that timing question, the Court needs to determine whether it is properly before it or whether the state by its previous actions in this case has forfeited its right to dispute the applicability of Siebert. But can you answer Judge Goodwin's question? Has the law changed so that the applicable law, Siebert, Missouri v. Siebert, does not, we do not look at it under Green? Your Honor, it certainly, if the state had preserved this issue, then the court would have to apply the law as it stood a few months before Siebert came out. But again, that's if the state had preserved the issue. And in each of these cases I've mentioned, in Smith v. Spisak, in Knowles v. Mirazance, in James v. Ryan, and in a somewhat different issue, in Wood v. Milliard, in every one of those, even though some of them involved, frankly, more fundamental questions than the one here, the courts have held parties, whether it was the state or the petitioner, to the actions they took below, to the actions they took earlier in the case. And as a practical matter, if this court were to entertain the argument under the sequence here, it is really hard to know how it could draw the line. Because virtually every argument in our contemporary habeas litigation relating to the merits can easily be formulated or reformulated as a matter of the correct framing or interpretation of the 2254 D1 standard. And under the state's argument, because an argument that the state neglected to present earlier, it can now package in a rehearing petition as going to the interpretation of the D1 standard by the state's argument. The court's going to lose control of its document.           Thank you. Thank you. Thank you. Thank you. Thank you. I'm sorry, Your Honor, you're over your time, please. If my time is almost up. No, no. It's well over. It's well over. In that case, unless the Court has any further questions, I will submit. Thank you very much. Thank you, Your Honors. We'll give him a minute or two in rebuttal, if you like. Thank you. May it please the Court, Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, it's our position that after Green, the only question before this Court is whether the State Court's application of LSTAT was unreasonable, and that the Court should reject the petitioner's attempt to get the Court to persist in using what we now indisputably know is the wrong standard of review. This is our problem. We're a court, and we, the district court, has a court. They decide a case the way it's given to them. We decide a case the way it's given to us. We both did that. You were given the opportunity to make this argument. You recognize now that the argument was at least available because the, both the Supreme Court law and our law was unclear. You've never argued otherwise. And you didn't make the argument when, even when invited to do so in oral argument and in all the months thereafter. And then at the petition for a hearing, you come back and you say, we understand we're making an argument we never made before, and we should have an entire new briefing now on the question. Now, is that a way for, to handle litigation or the way in which litigation is ordinarily handled and a way in which there's any efficiency if we just now start, oh, fine, start all over again? Well, I think there are two answers to the Court's question. The first is that, in fact, the standard of review is different from the types  Kagan. But this isn't really the standard of review. It's the way in which we apply the standard of review, given what cases were out there and what we were told were the pertinent cases. Now, if you had instead, if the question wasn't, well, is it Siebert or Elster because of timing, but is it, you know, Jones or Smith because it's which one is pertinent, it would still be in the same place as far as the argument you're making. Well, I think it is, in fact, a hard and fast standard of review. It's not simply like so. In other words, you could come back in the petition for re-hearing and say, oh, wait a minute, we didn't tell you that there's actually another Supreme Court case we never mentioned, and under it, that's really the clearly established Supreme Court law, so let's start over again. Well, I think this is different from nuances of a standard of review like whether something is an unreasonable application, because this is a hard and fast rule. We now know that clearly established has to be as of the time of the State court opinion. It's a finite, hard and fast rule that we didn't know about before. All right. Suppose somebody comes back next week and says, well, the – in fact, the court of appeals in such and such a State really doesn't review the merits unless X and Y, so that one doesn't count either. We start that one all over again? I'm not sure if I understand the question. Well, the court of appeals didn't write anything as to its opinion, so that's not a merits decision. It just said affirmed. Suppose that argument is made. Well, I think it's – In a petition for hearing for the first time. And if you're getting at the James v. Ryan situation, I mean – Well, let's take the James v. Ryan situation. I think what happened there was there was an argument, a factual argument, that was always available to the State, which is whether this was a procedural bar. So what difference does that make? If you're telling me that the standard of review can't be ever – has to be applied if it's applicable in James v. Ryan, they came back and they said, oh, wait a minute, we screwed up. In fact, there was a merits decision. And you should have – so therefore, you should have applied a deferential review instead of a de novo review. It's exactly the same thing. What's the difference? I disagree. That was simply the factual situation of how the State court – the State viewed that State court opinion. And when this Court indicated that it found that waived, it only cited cases that had to do with the waiver of arguments. The Court certainly didn't seem to think that it was holding that the State had waived a standard of review, which would have been unprecedented. You waived an argument about the standard of review, the argument being an argument concerning timing. That's what you waived. But what I'm saying is in James v. Ryan, the Court simply cited standard kind of cases saying that the State can waive its argument. What's the difference in what it cited? What it held was that a – that something that might have been a merits decision still wasn't cognizable under 2254g1 because it hadn't been raised before. That was simply the result. And as I say, the Court did not indicate that it was taking this unprecedented step. As far as I can tell, it was. But would that create a circuit split? That's what I'm concerned about. It would create a circuit split. It would have been the –  In those other cases, there was nothing like this, right? What happened there was they just didn't discuss 2254g1, whether it applied or it didn't apply. We did. Well, that's not entirely true, Your Honor. What happened in Gardner v. Goletka was the State court had originally argued that the ADPA review applied to a particular claim. And then at oral argument, for some reason, it changed its position and actually said that it should be a de novo standard of review, which the Tenth Circuit said was an odd position to take. And the Tenth Circuit refused to accept that concession by the State. And it said it's one thing to allow parties to forfeit claims, defenses, or lines of argument. It would be quite another to allow parties to stipulate or bind us to application of an incorrect legal standard contrary to the congressional purpose. So there's that case. And then the two other cases from other circuits that have clearly said a standard of review is different from an affirmative defense or a procedural defense, and it is something that a court has an obligation on its own to determine. I think that also just ---- But the question here is not the standard of review. The question here is what was the clearly established Supreme Court law at the relevant time. Well, we all agree what the standard of review is. Now, the original opinion didn't say otherwise. The question is, how is it applied here? And that depends on what's the clearly established Supreme Court law at the relevant time. And that question is going to come up in a myriad of different ways. But this is different because it was actually this unsettled question about what does clearly established mean? Because without sound, you could have raised it. Until November of 2011, we didn't know what the answer was. And to get back to the ---- All right. So we should apply the same rule to Petitioners then, right? If they don't raise something because they didn't know what the law was, therefore they're the obligation to exhaust and the obligation not to procedurally default and so on. And to raise things for the first time in our court should be ---- should not matter. Well, those are the kinds of things that can be waived, I think. And I'm saying that a standard of review is qualitatively different and something that a court has an obligation to decide on. In Brown, the Sixth Circuit case, wasn't that a Petitioner had waived this? It was. A Petitioner who had ---- And then the court said you can't waive the standard of review. Yes. He had declined to raise ADPA, and the court did say we're not going to apply that even though he hadn't raised it. But ---- and I think that's actually confirmed by Wood v. Milliard, the recent Supreme Court case, because that case simply talked about the waiver or forfeiture of defenses. It cited Habeas Rule 5b, which lists the kinds of procedural defenses the State has to put in its answer, which are exhaustion, procedural bars, retroactivity and the statute of limitations. It said nothing at all about a standard of review. Those are all defenses, right? Those are procedural defenses. We agree that those can be waived. We're saying that a standard of review is different. And to answer Judge Berzon's original question, I think that one other thing that is different about this case from any of these other cases that we've been talking about is, in this case, this whole question was not only unsettled, but really hadn't even emerged at the time of the original briefing in the case. We filed our brief back in July of 2009. At that point, there were the two opinions in Williams v. Taylor, both writing for the court, that seemed to give contradictory answers to this particular question. And at oral argument the first time around, which was in February of 2010, Judge Berzon said, well, this is a case where this difference matters. And we found a couple of cases where it was a similar situation to this, where there was a State court opinion and then the new. Kagan. But you're not suggesting that a good lawyer couldn't have found this issue and raised it. It wasn't impossible, but it really did not even emerge as an issue until after our briefing and even after the argument. So you're saying that there were undecided cases to us, saying that this was an undecided question at the time and that there were cases in this circuit going both ways and cases in the Supreme Court going both ways. There were. And there were no cases where it mattered, as the judge had said. That somewhat goes to the waiver argument, right? I mean, that if you had mistakenly relied on the wrong Williams part, that doesn't doesn't – it's not an intentional waiver of that argument. That is the point I'm trying to make. A waiver is an intentional relinquishment of a known right. In this case, it couldn't have been a known right. Well, it was certainly known by the time of the oral argument when Judge Acuda raised it and when you said you weren't raising it. We indicated that we – And the seven months thereafter. We indicated that we had not made that specific argument, but we're not raising it. And you didn't make it, and you didn't make it thereafter. Well, once the case had been submitted, we didn't – we felt that it had already been submitted to the court. But the cases that – as I say, where it mattered, the two that I'm aware of are Green, which the Supreme Court eventually took and became Green v. Fisher, and Miller v. Stovall, which the Supreme Court has now remanded for further consideration in light of Green v. Fisher's. Those didn't happen until after the oral argument. And as recently as November of 2011 in Bobby v. Dixon, which we cited to the court, that is a very similar case to this because it's a Siebert claim that was decided after the State court opinion. And the Court said it's an open question whether – whether that is clearly established. Right. It was an open question. That's why you should have raised it. They have now decided it. It was an open question. As an open question, ordinarily litigants are required to raise them if they want them decided. Well, as of November 2011, that's how they characterized it. Back in July of 2009, this was much less clear than it is where we're looking back at it now. Well, I would be happy to accept this if you're going to accept the same rule as applying to Petitioners throughout the habeas. And you certainly don't, i.e., things that they – that hadn't already been crystallized in a Supreme Court opinion as an open question don't have to be raised or exhausted. That is not the rule. Well, we're simply talking about it in context of whether there is a forfeiture here. I think it's a separate question of – if I understand the Court's question, was it clearly established at the time of the State Court opinion in the sense that the Supreme Court had to have a rule that was on all fours or that was squarely on point? That, I think, the Supreme Court has made clear is a strict test. What we're talking about now is for purposes of forfeiture or waiver. Was – what was the state of the law at the time when we were briefing this? And it really was not clear. It didn't even emerge as an issue until afterwards. If a State Court declined with respect to a Petitioner or a potential Petitioner to entertain this case, this issue, or an issue – similar issue having to do with a State of Review, for example, because it was raised too late, it would be a procedural bar and we – and that would be the end of it, right? It's hard for me to imagine exactly what kind of situation that would arise in because – except for this question, most of the basics of that – Suppose it was a question of a Strickland claim or a Brady claim and the question is how much – a homiceric kind of a standard or a review of the district court's facts or whatever. I mean, you would be standing up here vigorously arguing that there was a procedural bar and even if they – if the issue hadn't been crystallized by the Supreme Court yet, they still had to raise it and that was the end of that. Wouldn't you? Well, I think the question isn't – in that situation, if I understand the question, it's not so much of whether they had to raise it but simply what was the clearly established Supreme Court law and was it firmly on point. And again, I think that's different than the question of – I'm going more generally than that question. I'm saying more generally. We do not ordinarily – and you, State Attorney General for California, in applying exhaustion of procedural default rules, for example, in habeas, do not take the kind of forgiving approach that you're asking us to take here. Well, but again, I think it's apples and oranges. I mean, if a Petitioner fails to make a particular claim and then we argue that that's not exhausted, I think that's totally different from saying here is a question of law that was very unclear at the time we briefed this. Now we know in the last couple of months that that was wrong and that this Court's opinions using that formulation were wrong and the other Court's opinions that use that formulation were wrong. But at the time we didn't know. Now we do. And so the question is, should we continue to use that wrong standard of review or should we use the right standard of review, which we know – Do you – what case – Gonzales, do you agree that under Gonzales this is clearly not jurisdictional? I think it's unclear. I truly think it's unclear, and that's partly because in Pinholster the Supreme Court described this as part of the basic structure of Federal habeas jurisdiction, and then in another case Chief Justice Rehnquist said 2254d1 might even be jurisdictional. Right. And then in Gonzales the Court said we've been very sloppy about what's jurisdictional and now we're going to clear it all up, or clear a lot of it up anyway, and using mandatory language isn't it. And this is exactly parallel language to what they were talking about in Gonzales, isn't it? Well, I think the answer to that is it doesn't matter whether it's jurisdictional or not. And this Court doesn't need to decide that question. You're not going to answer that question. Okay. Now, it does – Didn't the Court say, though, in Gonzales that we should also consider context, including the Court's interpretation of similar provisions in many years past, and that that was relevant to whether a statute ranks a requirement as jurisdictional. So you've cited a few contexts where, for 2254d, where the Court has indicated it's jurisdictional. I also note you cited Sumner v. Mata, I think, where the Court said that 2254d, now e, was intended to be jurisdictional. So I don't think Gonzales v. Thaler forecloses a determination of jurisdiction. No. I think it's – as I say, I think it's unclear, but we're certainly not going to argue that or concede that this is – that 2254d is not jurisdictional. I think it might be, but I think the Court doesn't need to decide that question. Could you briefly comment on the proposition that if we decided this, that we should allow them to go back to the State to exhaust? Oh, certainly. I think that is absolutely contrary to any approach to ADPA review, and particularly would contravene Green v. Fisher. In Green, the Court said that this was a predicament of his own making because the petitioner hadn't filed a cert petition or filed a State habeas petition. And if he had done so, then there would have been a State court decision on the new case. The same thing could have happened here. Well, wait a minute. Certainly that isn't true with regard to a cert petition, that there necessarily would have been anything, right? I mean, here he asked the State to wait for Siebert. The State supreme court, it didn't. If he had then taken a cert petition, either it could have been denied or there could have been a GVR and it still could have been ignored. So certainly he was not guaranteed any decision that way. No, but it was a possibility, and the Green court seemed to think it was a distinct possibility. Well, they said it would have definitely been GVR'd, is what they said. They did. Well, it might have been GVR'd, but that doesn't mean that a court that had already been asked to take not cognizance of the supreme court case would have done it at that point. But all he had to do was file a State habeas petition then and say, we argued this under ELSTAT before, now Siebert has come out, that's the case we think is our good case, and then there would have been a State court decision. And what would he have been told? He would have been told he already exhausted that issue. I'm sorry? He would have been told that issue was already decided, right? Because it was. Not necessarily. I mean, I think Siebert gives a separate factual basis for bringing the claims. And I think the Petitioner has actually argued that that would not have been procedurally barred in State court. So really there was nothing to prevent him from at least presenting that claim to the State court and getting a denial if that is what the court found appropriate. It's possible that the court could have had an evidentiary hearing as this Court did in Williams, United States v. Williams. Okay. You're now over your time by approximately the same amount that your opponent was over his time when we stopped him. So I think if you want to take one second to wrap up, that's okay. Just to finish my answer regarding the further exhaustion, I think that that is answered by this Court's recent opinion in Miros v. Sisto, which we cited in a letter brief, where the Court said that even if a new case could possibly be considered under Teague, doing so would contravene 2254d-1. So if all you had to do was say, well, we think we can now go back and exhaust, that's just an end run around the statute and around 2254d. So I think that's totally inappropriate. Thank you very much for a helpful argument. Thank you. Thank you, Your Honor. I'll try to use this one minute wisely. Let me respond to the predicament of his own making notion. The State's argument is that this pro se petitioner should have realized back in 2004 that he needed either to do a cert petition or a State habeas petition. Well, I guess if the argument was available, as Judge Berzon is suggesting, why shouldn't he have made that? I think you'll run into yourself that way. Pardon? I think you'll run into yourself that way, i.e., if the State should have made the argument, then why shouldn't he have made the argument? And that exactly is where I'm going, Your Honor. The State then says that they argue that the issue was obscure enough that the State Attorney General's office can't be faulted for not raising it in 2009 to 2010. Well, they may be running into themselves as well. Maybe you're both running into yourself. The Green says that he should have known. That's what Green said as to that petition. Well, it did not. Green did not address the situation, did not address the question of waiver because in Green, as is quite evident from the Third Circuit opinion, the State all the way through the Federal process, before the magistrate, before the district court, before the Third Circuit, the State consistently asserted that the relevant precedent, which I believe was one of the prudent precedents, I think it was Gray, could not be applied because it was decided in this finality window. So Green didn't involve a situation comparable to this. Let me also address that language from Pinholster because I know the Court also asked about that in its supplemental briefing order. The language was actually quoted originally from Richter, Harrington v. Richter. And as read in the complete paragraph, the Court is describing 2254d-1 as serving the same objectives of comity and federalism as exhaustion and procedural default. And as we all know, both of those are waivable. Well, there are defenses, though. I mean, they may serve the same purpose, but they're not affirmative. The 2254d is a standard of review, not an affirmative defense. Okay. Your Honor, I believe they're all policies serving the same principle and that they should similarly – and we should apply them similarly. All right. Your time is up. And we thank both of you for an extremely helpful argument. It was a very helpful thing. And a quagmire-like case. Thank you very much. Thank you. Thank you, Your Honors. All rise. This Court for this session is adjourned.
judges: Goodwin, Berzon, Ikuta